# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAMON ATKINS,  :
        Plaintiff,  :
          :
        v.  :   Civil No. 5:23-cv-02732-JMG
          :
CITY OF READING, *et al.*,  :
        Defendants.  :

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                                                                                                    **July 29, 2024**

### I.    OVERVIEW

The Third Circuit has emphasized the importance of "strik[ing] a balance" between the rights of persons engaged in a permitted event and the rights of counter-protestors on a public fairway, "while at all times remaining true to the essence of the First Amendment." *See Startzell v. City of Phila.*, 533 F.3d 183, 188 (3d Cir. 2008). Officers in the field, while tasked with the important duty of keeping the public safe, must remain cognizant of important First Amendment rights. To arrest a protestor for speaking prior to a permitted event, while standing across the street, when no members of the crowd acknowledged him, and his speech did not contain anything that could be construed as unprotected, violates that speaker's constitutional right to free speech.

Plaintiff Damon Atkins alleges numerous § 1983 claims and state law violations against Defendant Police Sergeant ("Sgt.") Bradley McClure.[1] Pertinent to the instant motion, Plaintiff

---

[1] Additionally, the Complaint contains allegations against Defendants the City of Reading, Chief of Police Richard Tornielli, Officer Courtney Dupree, and Mayor Eddie Moran. The case against Officer Dupree has since been terminated.

alleges Sgt. McClure subjected him to First Amendment retaliation, a Fourth Amendment violation, malicious prosecution, false imprisonment, and assault and battery.[2]

Before the Court is Plaintiff's Partial Motion for Summary Judgment, in which he alleges, *inter alia*, Sgt. McClure arrested him without probable cause in violation of his constitutional rights. Plaintiff moves for summary judgment against Sgt. McClure on his First Amendment retaliation claim, Fourth Amendment claim, both malicious prosecution claims, false imprisonment, assault and battery, and seeks a determination that Sgt. McClure is not entitled to qualified immunity. Sgt. McClure maintains, *inter alia*, that he arrested Plaintiff based on probable cause, and even if he did not have probable cause, he is entitled to qualified immunity. For the reasons that follow, the Court grants summary judgment in part and denies it in part.

## II.   FACTUAL BACKGROUND

On June 3, 2023, with a validly obtained permit, the Reading Pride Celebration conducted the First Reading Pride March & Rally beginning with a flag raising ceremony at City Hall in Reading, Pennsylvania. Pl. Statement of Undisputed Facts at ¶¶ 1-2, ECF No. 24. Prior to the commencement of the event, a group of protestors stood on Washington Street, which opposes City Hall, holding signs and stating religious messages. McClure Body Cam 0055 at 00:30-00:32. Sgt. McClure, while on duty, stood between members gathered for the event and the group of protestors on Washington Street. Building Footage 0059 at 31:08-41:08.

Sgt. McClure approached a group of three protestors engaged in religious communication, placed his hand upon one, and directed him backwards. ECF No. 24 at ¶ 5; Def.

---

[2]   Plaintiff also alleges he was subject to defamation and false light. Additionally, he brings a failure to train claim against the City of Reading, Mayor Moran, and Chief Tornielli. Plaintiff has not moved for summary judgment on these claims, and they are therefore not addressed in this Opinion.

Response to Alleged Facts at ¶ 5, ECF No. 28; McClure Body Cam 0055 at 00:30-00:33. He told the protestor:

> You are not going to stand here and yell. This is not going to be a thing. They have a permit to be here, whether you like it or not. You can cry about it all you want, but you are not going to disrupt this. You want to stand here, stand here, but if you think you are going to yell insults to them…

McClure Body Cam 0055 at 00:35-00:46. When the protestor interrupted Sgt. McClure and stated, "I haven't said one insult to them, Sir.," Sgt. McClure told him to "shut up," and continued to state:

> Okay, that is not going to happen. This is not going to be a thing. If it is, then you're getting arrested. You guys are all getting arrested. I don't care. Alright? They're having their event. Live with it. Does it really affect your life that much? No, it doesn't.

*Id.* at 00:46-01:02. The protestor then stated, "I go out of my way because I care for their souls." *Id.* at 01:03-01:04. Sgt. McClure then responded, "Yeah, well, get over it. Okay, there is other ways you can care, but you're going to end up getting arrested. Alright, you want to make this a thing, I'll make it a thing." *Id.* at 01:04-01:15.

When asked about his motivation for this interaction, Sgt. McClure stated the protestor's speech was "clearly antagonistic towards people, designed to get a reaction from them and being disruptive to [the] event." McClure Dep. Tr. 74:22-25, ECF No. 25-4 at 73.

Subsequent to this interaction, Plaintiff Atkins walked down the south side of Washington Street, crossing 8th Street, and walked toward City Hall. Atkins 000055 at 01:44-01:45. He was holding a sign that stated, "JESUS SAID GO AND SIN NO MORE." *Id.* The parties dispute whether Plaintiff verbally stated anything prior to Sgt. McClure approaching Plaintiff.[3] Upon

---

[3] For the purposes of the instant motion, the Court views all facts in the light most favorable to the nonmovant. Therefore, the Court accepts Officer McClure's contention that Plaintiff stated

Plaintiff reaching the area where the other protestors were standing, Sgt. McClure approached him and began to speak to him. *Id.* at 01:45-01:49. The beginning of this conversation is incomprehensible on the recording provided to the Court, but Sgt. McClure testified that he "probably said something to the effect that you can't disrupt this event." McClure Dep. Tr. 109: 4-5, ECF No. 25-4. He is later heard saying "let them have their day," which he described as meaning "if they want to raise this flag at City Hall, if that makes their day, let them raise the flag… Like, to me, my point of view, this is only going to bother you if you choose to show up and let it bother you." *Id.* at 109:9-18. He goes on to tell Plaintiff to "respect" the event, during which time Plaintiff was speaking over Sgt. McClure stating, "this is public property" and "the people that are in hell" are the people cheering for the event, among other things. Atkins 000055 at 01:54-02:09. At that time, Sgt. McClure walked away from Plaintiff. *Id.* at 02:08-02:11.

      Within a few seconds of Sgt. McClure taking a few steps away from Plaintiff, Plaintiff stated "Yo, God is not-" at which time Sgt. McClure approached Plaintiff and began to place his hands behind his back to secure him into handcuffs. *Id.* at 02:13-02:40. Plaintiff again stated, "God is not the author of-" and was pulled away by Officer McClure. *Id.* at 02:41-02:44. Approximately one minute and ten seconds after Sgt. McClure began placing Plaintiff in handcuffs, the permitted event began with a speaker stating "Good Morning ladies and gentlemen. We are going to get started." *Id.* at 03:25-03:30. After securing Plaintiff into handcuffs, Sgt. McClure led Plaintiff to another location. While transporting Plaintiff, and with members of the event cheering in the

---

something prior to his approach. *See* McClure Dep. Tr. 107:12-25, 108:1-19, ECF No. 25-4. However, Sgt. McClure cannot remember the details of the utterance. *Id.* at 108:15-16. Further, based on the video evidence, the Court confirmed that the time between Plaintiff's approach and Sgt. McClure initiating the interaction was less than a minute. 0059 Building Footage 39:41-40:27. During that time, any audio that Plaintiff uttered was not captured on video taken at the scene. Atkins 000055 at 01:00-01:50.

background, Sgt. McClure stated "They're clapping for you buddy. They're clapping for you. You made them more proud." McClure Body Cam 0056 at 01:18-01:25. Sgt. McClure later stated to Plaintiff "I told you, all you have to do is stand there and keep your mouth shut, and you can't even do that." *Id.* at 02:06-02:10.

Subsequently, Officer McClure filed an incident report which stated Plaintiff arrived at the event "carrying a sign with an anti-gay slogan written on it," "he began to yell to the people at the event," Officer McClure informed him that "while he was free to stand there on that side of the street and hold his sign, he could not cross the street nor yell comments intended to disrupt the event," and "less than a minute later he resumed yelling derogatory comments to the people at the event." McClure Report at 103, ECF No. 25-4.

## III.   LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the

[nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

## IV. ANALYSIS

### A. First Amendment Retaliation

To establish a retaliation claim under the First Amendment, a plaintiff must establish "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Here, while there is no genuine issue of material fact as to whether Plaintiff was engaged in constitutionally protected conduct, and an arrest is retaliatory action sufficient to deter a person of ordinary firmness from exercising a constitutional right, whether there is a causal link between the protected conduct and the retaliatory action cannot be established as a matter of law. Therefore, this element is left for the jury's determination.

#### 1. First Amendment Protection

"Three considerations underlie any First Amendment analysis of a challenge that [a plaintiff was] excluded from an event: (1) whether the speech is protected by the First Amendment; (2) the nature of the forum; and (3) whether the government's justifications for exclusion from the

6

relevant forum satisfy[s] the requisite standard." *Startzell*, 533 F.3d at 192 (internal citations and quotations omitted). Sgt. McClure does not seem to contend the substance of Plaintiff's speech was unprotected, but instead asserts that Plaintiff's failure to follow his orders and "disrupt[ing] a permitted event by yelling at the event goers" resulted in probable cause to arrest and remove Plaintiff. Def. Brief in Opp. at 4, ECF No. 27. Further, Sgt. McClure does not dispute that Plaintiff was arrested while speaking in a public forum.

The analysis then turns to whether Sgt. McClure was justified in arresting Plaintiff based on the events at issue. "In considering the extent to which the government may restrict or regulate expressive activity in a public forum, a distinction must be drawn between content-based and content-neutral regulations." *Startzell*, 533 F.3d at 193. "[L]aws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based." *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994). Content-based restrictions are subject to the "most exacting scrutiny" because they "pose the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information or manipulate public debate through coercion rather than persuasion." *Id.* at 161-62. Viewpoint discrimination, which targets "particular views taken by speakers on a subject," is an "egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). "To justify a content-based restriction, the government must show that the regulation or restriction is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Startzell,* 533 F.3d at 193 (internal citations omitted).

On the other hand, if a legislative enactment is content and viewpoint-neutral, the government is permitted to regulate the time, place, or manner of the expression if the regulation is narrowly tailored to serve a significant government interest and leaves open ample alternative

channels of communication. *Id.* However, the Third Circuit has found that "police directive[s], issued by officers in the field, pose[] risks" that warrant heightened scrutiny. *McTernan v. City of York*, 564 F.3d 636, 655 (3d Cir. 2009).[4] "[W]hen the government restricts speech, the government bears the burden of proving the constitutionality of its actions." *U.S. v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 816 (2000) (internal citations omitted).

      **a.**      **Content-Neutral**

When analyzing whether a regulation is content-based or content-neutral, a Court must examine whether "the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Plaintiff asserts that Sgt. McClure prohibited his speech based on hostility toward his religious message. Sgt. McClure contends his constraint was a content-neutral time, place, and manner restriction, merely prohibiting Plaintiff from disturbing the permitted event. ECF No. 27 at 7. The Court finds that under either analysis, Plaintiff prevails on summary judgment. Therefore, for the purposes of the instant motion, the Court accepts Sgt. McClure's content-neutral analysis.[5]

---

[4] The Third Circuit reasoned that a police directive "does not embody the popular will but rather represents an exercise of authority." *McTernan*, 564 F.3d at 655. These concerns are present here, as Sgt. McClure acted without legislative guidance regarding the volume or timing of counter-protest regulations. "Democratic input is especially critical in formulating speech restrictions, which must carefully balance constitutional rights against public safety imperatives." *Id.* The discretionary nature of police directives, like the one at issue here, warrants the use of heightened scrutiny.

[5] Although the Court views the facts of the instant event through a content-neutral lens for the purposes of this motion, it notes the concerning language Sgt. McClure used with the protestors and his stated reasoning for Plaintiff's arrest. Telling people engaged in free speech activity to "shut up," "cry about it," and "stand there and keep [their] mouth shut," coupled with testimony indicating supportive language is permissible, but not negative language, could potentially lead a Court to analyze such restriction as content based. *See* McClure Body Cam 0055 at 00:39-00:41, 00:47, McClure Body Cam 0056 at 02:06-02:10, McClure Dep. Tr. at 124:4-13, ECF No. 85.

### b. Tailoring Requirement

Under a traditional intermediate scrutiny analysis, "a restriction is narrowly tailored to achieve an important government interest if that interest would be less effectively achieved without the regulation." *McTernan*, 564 F.3d at 655. Under that analysis, the regulation does not need to be the least restrictive means of achieving the goal. *Id.*

However, under the heightened scrutiny analysis applied to police directives, "proof that a restriction represents the most effective means of achieving the proffered government interest is insufficient." *Id.* at 656. Instead, the restriction must burden "no more speech than necessary to serve that interest." *Id.* (internal citations and quotations omitted).

Here, the Court does not find that prohibiting all counter-speech prior to the start of a permitted event, when the speech is taking place across the street and is largely ignored by the permit holders, burdens no more speech than necessary to protect the rights of the permit holders.[6] Sgt. McClure argues that he was not prohibiting all counter-speech, but instead arrested Plaintiff

---

[6] Sgt. McClure described his restriction as on "language that's designed to get a negative reaction from the crowd that's there." McClure Dep. Tr. at 124:10-12, ECF No. 25-4 at 85. It is unclear what, if any, counter-speech Sgt. McClure would have permitted. However, prohibiting all speech that meets this description, without more, violates the First Amendment. Under Sgt. McClure's restriction, protestors would be silenced, and public debate would become virtually impossible. The First Amendment protects the rights of protestors to voice their opinion, despite societies perception of the speech. *See Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable"); *Boos v. Barry*, 485 U.S. 312, 322 (1988) ("[I]n public debate our citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment")(internal citations and quotations omitted).

Further, Plaintiff was unable to deliver a full statement prior to his arrest. It is unclear whether his speech would have received a negative reaction from the crowd. Sgt. McClure restrained his freedom of speech based on his personal opinion of what Plaintiff *would have said* and the reaction it *would have received.* This type of prior restraint cannot stand and restricts more speech than necessary.

because of his tumultuous behavior.[7] However, it is clear from the video that Plaintiff was not engaged in tumultuous behavior prior to his arrest, and instead, was engaged in protected speech.[8]

---

[7] In Sgt. McClure's Opposition to Plaintiff's Motion for Summary Judgment, he does not provide a clear First Amendment analysis, and instead rests his argument on his assertion that he possessed probable cause to arrest Plaintiff for disorderly conduct pursuant to Pennsylvania Criminal Code, 18 Pa. C.S. § 5503(a)(1) which provides:
  (a) Offense defined. –A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
    (1) Engages in fighting or threatening, or in violent or tumultuous behavior;
In his incident report, Sgt. McClure stated he "filed a criminal complaint charging [Plaintiff] for disorderly conduct (M-3 engaging in tumultuous behavior)" and the criminal complaint listed the offense as "with intent to cause substantial public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he engage[d] in fighting or threatening, or in violent or tumultuous behavior." ECF No. 25-4 at 103-06. The Court therefore finds Sgt. McClure bases his probable cause analysis only upon 18 Pa. C.S. § 5503(a)(1), as opposed to 18 Pa. C.S. § 5503(a)(2)-(4).

It is clear that 18 Pa. C.S. § 5503(a)(3)-(4) would be inapplicable, as nothing Plaintiff said could be construed as obscene and he did not create a hazardous or physically offensive condition. At times, Sgt. McClure seems to rely on the volume of Plaintiff's speech to support his probable cause analysis. *See* ECF No. 27 at 5. To the extent he is arguing that Plaintiff's volume could establish liability under 18 Pa. C.S. § 5503(a)(2), the Court rejects this argument.

Unreasonable noise, by its commonsense definition, must mean noise above and beyond that customary for the time and setting of the forum. *See Farmer v. Decker*, 353 F. Supp. 3d 343, 356 n. 10 (M.D. Pa. 2018) ("noise that is not fitting or proper in respect to the conventional standards of organized society or legally constituted community.") (internal citations and quotations omitted). "The relevant factors assessed in determining whether noise is unreasonable include its volume, duration, the time of day, and whether the noise was reported to the police." *Id.* (internal citations and quotations omitted). It cannot be said that merely amplifying your voice to be heard by your audience, prior to the start of any permitted event, is unreasonable and in violation of the law. Immediately prior to his arrest, Plaintiff barely spoke for two seconds before Sgt. McClure began handcuffing him and no event goers complained to the police. Although, the Court again acknowledges that it is accepting that Plaintiff said something unknown to the crowd prior to Sgt.'s initial approach, briefly yelling outside across the street from a permitted event with no complaints cannot be called unreasonable without more. It is clear from the video footage that even prior to the interaction with Sgt. McClure and Plaintiff, members of the crowd did not react to Plaintiff's approach. As Sgt. McClure cannot recall any further details regarding this yelling, he failed to present a genuine dispute.

[8] The Court acknowledges that video evidence is limited in time and scope. While a video recording does not capture all events occurring at a particular scene, where there are no allegations that the video evidence has been doctored or altered, the Court must view the facts in the light depicted by the video and determine whether a dispute of material facts exists. *See Betancourth v. Knorr*, No. 3:22-cv-00060, 2024 U.S. Dist. LEXIS 58850, *26, n. 14 (M.D. Pa. March 19, 2024). However, the Court also considers contradictory evidence that may have occurred outside the

The Merriam-Webster dictionary defines tumult as a "state of noisy confusion or disorder." *See*: "Tumult" Merriam-Webster; *Commonwealth v. Morency*, 2014 Pa. Dist. & Cnty. Dec. LEXIS 378, *11 (Berks Cty. Ct. C.P. December 8, 2014). It is incomprehensible to call mere vocal amplification prior to a permitted event, where the uttered words do not meet any of the established exceptions to the First Amendment, tumultuous behavior. No reasonable juror could find Sgt. McClure's directives burdened no more speech than necessary to protect the rights of the permit holders.

### c. Ample Alternative Channels of Communication

"The First Amendment does not guarantee a speaker an absolute right to actual conversation with his audience in every circumstance." *Id.* at 657. The Supreme Court has found that when speakers "could still be seen and heard" they possessed adequate alternatives to communicate their message. *Madsen v. Women's Health Ctr.*, 512 U.S. 735, 770 (1994).

Here, Sgt. McClure permitted the counter-protestors to stand across the street from the rally and hold signs bearing religious messages. However, prior to the start of the event, he told the counter-protestors they could not "yell insults" at the crowd, told them to "live with" the event, and told them to "shut up" when they attempted to explain they were not insulting the crowd. McClure Body Cam 0055 at 00:34-01:10. After Sgt. McClure arrested Plaintiff, he stated "I told you, all you have to do is stand there and keep your mouth shut, and you can't even do that." McClure Body Cam 0056 at 02:06-02:10. Effectively chilling all verbal expression of ideas on public property prior to the commencement of a permitted event does not leave open ample

---

scope of the video. In this case, it finds no dispute of material fact regarding whether the instant events established probable cause for a Disorderly Conduct arrest.

alternative channels of communication. Sgt. McClure violated Plaintiff's First Amendment right when he arrested him after he began to speak to the crowd prior to the start of the rally.

### 2. Retaliatory Action

The next element of Plaintiff's First Amendment Retaliation claim is retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. The retaliatory action "need not be great in order to be actionable, but it must be more than *de minimis*." *Mckee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).

Here, Sgt. McClure placed Plaintiff under arrest immediately after he began speaking to the crowd. A disorderly conduct arrest, or summons, is sufficient retaliatory action. *See Primrose v. Mellott*, 2012 U.S. Dist. LEXIS 84594, *20-21 (M.D. Pa. 2012).

### 3. Causal Link

Lastly, Plaintiff must establish a causal link between his constitutionally protected speech and the retaliatory action. However, when viewed in the light most favorable to Sgt. McClure, the evidence raises a genuine issue of material fact regarding whether Sgt. McClure acted in retaliation or whether he conducted the arrest because he legitimately, though mistakenly, believed he had probable cause to do so.[9] *See Primrose*, 2012 U.S. Dist. LEXIS 84594 at *21 (finding genuine issue when viewing evidence in light most favorable to defendant supports conclusion arrest was because belief of probable cause). Therefore, summary judgment is denied as to this element alone.

---

[9] Sgt. McClure was undoubtably in a difficult situation. Faced with two groups, with opposing viewpoints, engaging in free speech activity, he was tasked with maintaining order. In these situations, the First Amendment rights of all speakers must be protected. While Sgt. McClure wrongly quashed Plaintiff's First Amendment rights, the Court does not find as a matter of law he acted with retaliatory animus.

12

### B. Fourth Amendment Violation

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Plaintiff asserts Sgt. McClure violated his Fourth Amendment rights by arresting him without probable cause. On the record before us, the Court must agree.

Whether an officer had probable cause to arrest is based on "the facts available to the officer[] at the moment of arrest." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (internal citations omitted). "Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Karns v. Shanahan*, 879 F.3d 504, 522-23 (3d Cir. 2018) (internal citations and quotations omitted).

Here, as stated above, it was objectively unreasonable for Sgt. McClure to arrest Plaintiff for disorderly conduct after Plaintiff began speaking to the crowd gathered prior to the permitted event. Aside from the unknown statement made prior to Officer McClure's approach, Plaintiff was unable to utter even a single sentence to the crowd. Additionally, members of the event did not acknowledge Plaintiff. Therefore, the Court finds no reasonable juror could find Sgt. McClure had probable cause to arrest Plaintiff. Summary judgment is granted as to liability for Plaintiff's Fourth Amendment claims.

### C. Malicious Prosecution

A § 1983 malicious prosecution claim requires that: "(1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with

the concept of seizure as a consequence of a legal proceeding. *Lozano v. N.J.*, 9 F.4th 239, 247 (3d Cir. 2021). Under Pennsylvania common law, the tort of malicious prosecution shares the first four elements of the § 1983 claim; however, "there is no requirement to prove a deprivation of liberty." *Henderson v. City of Phila.*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012).

"In most circumstances, a plaintiff cannot proceed against a police office for a claim of malicious prosecution because a prosecutor, not a police officer, initiates criminal proceedings against an individual." *Hall v. City of Phila. L. Dep't*, No. 19-0110, 2020 U.S. Dist. LEXIS 180196 (E.D. Pa. Sept. 30, 2020) (internal citations omitted). "However, a police officer may be held to have initiated a criminal proceeding if he knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Harris v. City of Phila.*, No. 97-3666, 1998 U.S. Dist. LEXIS 12640, *13 (E.D. Pa. August 14, 1998). "In such cases, 'an intelligent exercise of the … [prosecutor's] discretion becomes impossible,' and a prosecution based on the false information is deemed 'procured by the person giving the false information.'" *Id.* at *13-14 (quoting Restatement 2d Torts § 653, cmt. g.).

Here, Plaintiff alleges Sgt. McClure falsified information in his incident report. However, at this stage, the Court views the facts in favor of the non-movant. It therefore accepts Sgt. McClure's testimony that Plaintiff was yelling at members of the crowd prior to Sgt. McClure's approach. Additionally, the Court does not find as a matter of law that the language used by Sgt. McClure in his incident report, including "anti-gay" and "derogatory," contained legally false statements at this stage. Instead, the veracity of these statements is left for the jury. Therefore, the Court does not find as a matter of law that Sgt. McClure knowingly provided false information in his report and summary judgment on this count is denied.

### D. False Imprisonment/Arrest

To prove a claim for false arrest, "a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020). Sgt. McClure asserts both that he had probable cause to arrest Plaintiff for disorderly conduct and that the detention of Plaintiff, which lasted for "a couple of hours," was *de minimis* and is therefore insufficient to warrant a False Imprisonment claim. Pl. Dep. Tr. 87:14-19, ECF No. 25-1 at 25. The Court disagrees. For the reasons stated above, no reasonable juror could find that Sgt. McClure had probable cause to arrest Plaintiff.

To support his claim that the amount of time Plaintiff was detained renders the detention *de minimus*, Sgt. McClure cites case law focused on whether a plaintiff suffered a deprivation of liberty sufficient to make out a malicious prosecution claim under the Fourth Amendment, which specifically requires a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See Penberth v. Krajnak*, 347 Fed. Appx. 827, 829 (3d Cir. 2009). Sgt. McClure has not cited, nor has the Court found, a case that requires a specified period of detention to make out a claim for false imprisonment. To the contrary, the elements of false imprisonment prove that the harm is committed at the time of the wrongful arrest. Summary judgment, as to liability, on Plaintiff's false arrest claim is granted.

### E. Assault and Battery

"Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree upon the person." *Cohen v. Lit Brothers*, 70 A.2d 419, 421 (Pa. Super. 1950) (citation omitted). "A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer

15

may use such force as is necessary under the circumstances to effectuate the arrest." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). If an officer uses unnecessary force, even if he or she did not do so intentionally, he or she can be found liable for these torts. *Id.* at 293-94.

Here, the force used by Sgt. McClure, although slight, was objectively unreasonable because it was subject to an unlawful arrest without probable cause. Therefore, summary judgment, as it regards to liability, is granted on both assault and battery.

### F. Qualified Immunity

"Government officials performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gilles*, 2004 U.S. Dist. LEXIS 28732, *28 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The Supreme Court has emphasized that the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." *Id.* (internal citations omitted). The doctrine "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The Supreme Court has fashioned a two-part inquiry to determine whether a government official is entitled to qualified immunity. First, there is a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Next, the court must determine "whether the right was clearly established." *Id.* "In addressing the second question, courts must frame their inquiry at the right 'level of generality.'" *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The

"contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "Prior decisional law need not have supplied a 'precise formulation' of the applicable constitutional standard in order to overcome an official's qualified immunity, but the 'relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Barham*, 434 F.3d at 572 (quoting *Saucier*, 533 U.S. at 202).

The Supreme Court has held that streets and parks "have immemorially been held in trust for the use of the public and, time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. C.I.O.*, 307 U.S. 496, 515 (1939). The Third Circuit has explicitly stated that the grant of a permit does not alter that principle. *Startzell*, 533 F.3d at 195. While police officers must exercise their discretion to protect the public and maintain order, especially during events that draw in large crowds, they must remain cognizant of important First Amendment principles. As discussed, the right to speak in a public forum, even if that speech offends the listener, has been well established throughout history, with limited exception. A reasonable officer would know that prohibiting a protestor from speaking prior to the commencement of a permitted event, when the protestor was across the street from the crowd, and members of the crowd did not acknowledge the protestor, violates the speakers First Amendment rights.

After review of the facts known to Sgt. McClure at the time of Plaintiff's arrest, including that Plaintiff was engaged in unknown yelling prior to Sgt. McClure's approach, he spoke over Officer McClure during their conversation, he disobeyed Sgt. McClure's order not to speak, and he projected his voice to address the crowd, the Court finds that Sgt. McClure's decision to arrest

Plaintiff violated Plaintiff's clear constitutional rights.[10] Sgt. McClure's defense of qualified immunity is therefore denied.

V.      **CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment in part and denies it in part. The Court grants summary judgment as to liability on Plaintiff's Fourth Amendment, False Imprisonment, and Assault and Battery claims. Additionally, it finds Sgt. McClure is not entitled to Qualified Immunity. It denies summary judgment on Plaintiff's First Amendment Retaliation claim, as it pertains to the causal connection element, and malicious prosecution claims.

A separate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[10]    Refusal to cooperate with law enforcement, without more, does not justify an arrest. *Fla. v. Bostick*, 501 U.S. 429, 437 (1991). The remainder of the facts are discussed *infra*.